## Commonwealth v. Smith

*John P. Butt*, district attorney, for Commonwealth.
*Richard A. Brown*, for defendant.

SHEELY, J., December 27, 1937.—The defendant was convicted of the charge of inciting to riot. He has filed a

motion for a new trial alleging that the verdict was contrary to the law and contrary to the evidence.

At the trial the Commonwealth offered evidence to show that the defendant was a picket captain in charge of a group of pickets engaged in picketing the local furniture factories during a strike. There were about 75 to 100 pickets in line moving from one factory building to another "booing" the workers within the factories and calling them "scabs" and "yellow-bellied scabs". A considerable number of nonstriking workers were inside the factory building and it was shortly before "quitting time". A number of rocks or stones were thrown from outside the factory through the factory windows, making it necessary to move furniture away from the windows to prevent scratching. One rock almost hit one of the nonstriking workers inside the factory.

The prosecuting officer, on police duty at the factory, heard glass breaking and as he came around the corner of the building he saw the defendant throw a rock in the direction of the factory. All of the pickets were then in the immediate vicinity of the defendant. On the basis of this alleged act he prosecuted the defendant for inciting to riot.

The defendant testified that it was his duty, as picket captain, to see that the pickets "didn't do anything out of the road—such as throwing stones". He denied throwing any stones himself or hearing any glass breaking, and denied that any of his men threw stones. A large number, perhaps 20, of the men on the picket line testified that they did not see the defendant throw any stones.

There was a direct conflict of testimony as to the facts and the case turned upon the credibility of the witnesses. It was a proper case for the jury, and we cannot say that the jury erred in accepting the positive testimony of the officer as being credible in preference to that of the 20 pickets, particularly since their testimony was merely negative; that is, their testimony could go no further than that they did not see the defendant throw a stone.

The important question presented is whether the facts found by the jury constitute the offense of inciting to riot as a matter of law. In passing upon this question it is important to keep in mind that no riot did, in fact, ensue as a result of the acts of the defendant. Of course, if a riot had ensued as a result of his acts he would have been guilty of inciting to riot and also of riot.

In Commonwealth v. Haines, Jr., 4 Clark 239 (1824), it was held by Justice Gibson that the offense of inciting to riot is an indictable offense at common law. He there said:

"No man has a right to trifle with the feelings of any large class of men, so as to provoke them to a breach of the peace. . . . The gist of the offense, is its tendency to provoke a breach of the peace. It may be indiscreet . . . to take notice of acts of the kind; but it is worse than indiscreet in others to provoke them to do so."

In Commonwealth v. Merrick et al., 65 Pa. Superior Ct. 482, 491 (1917), the Superior Court approved an instruction to the jury in the following language:

" 'Inciting to riot, from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter upon conduct which, if completed, would make a riot. If any man or set of men should combine and arrange to so agitate the community to such a pitch, that the natural, and to be expected results of such agitation, would be a riot, that, would be inciting to riot, an offense at the common law, an offense charged in the first count in this indictment.' " In the same case at page 489, the court said:

"While incitation to riot is not a statutory offense in this State, it was clearly an offense at common law, and has been always so recognized in Pennsylvania. The gist of that offense is, its tending to provoke a breach of the peace, even though the parties may have assembled in the

first instance for an innocent purpose. . . . A rioter is defined to be one, who inflames the people's minds and induces them by violent means to accomplish an illegal object; and, giving the word 'incite' its plain and accepted meaning—to arouse, stir up, urge, provoke, encourage, spur on, goad,—there can be no doubt of the offense charged in the first count, without which offense, there would be but few developed riots".

In Commonwealth v. Redshaw, 2 Dist. R. 96 (1892), the defendant was convicted of disorderly conduct for calling "scab" and "damned scab" to three nonunion workmen with the intent to provoke said workmen to cause a breach of the peace. In affirming the conviction Judge Porter said:

". . . for a man of one party to intentionally apply an offensive epithet to a number of men of the other party as they are passing along the public highway must of necessity tend to create tumult and provoke a conflict. At such a time a man who acts in such a manner is guilty of a public breach of the peace, and cannot, in any sense, be held to be an orderly person. . . . He must have known that a riot was a probable consequence of his conduct."

In the present case the jury has found that the defendant, while acting as a captain in charge of a group of 25 pickets who, together with some 50 other pickets, were "booing" the nonstriking workmen within the factory, deliberately threw a stone in the direction of the factory. If, as a result of his act, the nonstriking workmen had come out of the factory and engaged in conflict with the pickets, or if the other pickets had also commenced throwing stones through the factory windows, there can be no doubt that a riot would have existed. Under the circumstances then existing, the throwing of a stone into a factory in which nonstriking workmen were employed would have a natural tendency to cause them to retaliate, and the throwing of a stone by a picket captain would have a natural tendency to cause the men under him to

likewise engage in throwing stones. If such act would not have a tendency to produce either one of the two suggested results, one might well inquire as to the purpose of throwing the stone at all.

What might be sufficient to constitute inciting to riot under one set of circumstances might not be sufficient to constitute an offense under a different set of circumstances. However, with the background disclosed in this case, we hold as a matter of law that the acts of the defendant, found by the jury to have been committed by him, constitute the crime of inciting to riot.

And now, December 27, 1937, the defendant's motion for a new trial is refused and the district attorney is directed to call the defendant for sentence.